Timothy A. Scott (SBN 215074)
Lauren M. Williams (SBN 306918)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tscott@mckenziescott.com
        lwilliams@mckenziescott.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF AMANDA BEWS, by and through its successors-in-interest A.S.R., by and through her guardian MELINDA BETTENCOURT and R.E.H., by and through his guardian ROBERT HAMBY; MELINDA BETTENCOURT, individually,

         Plaintiffs,

V.

COUNTY OF LOS ANGELES; ALEX VILLANUEVA in his official capacity; SEAN OBRIEN HENDERSON, MD in his individual capacity; TRI HONG, RPh in his individual capacity; FRESNO CREMATION COMPANY d/b/a CHAPEL OF THE LIGHT; DEFENDANT CHAPEL OF THE LIGHT DOES 1-10 in their individual capacities; DEPUTY DOES 1-20 in their individual capacities; DEPUTY SUPERVISOR DOES 1-10, in their individual capacities; MEDICAL PROVIDER DOES 1-20 in their

Case No.: _____

**COMPLAINT FOR DAMAGES FOR:**

1. **42 U.S.C. § 1983: Deliberate Indifference**
2. **42 U.S.C. § 1983: Substantive Due Process**
3. **42 U.S.C. § 1983: Deliberate Indifference (*Monell*)**
4. **42 U.S.C. § 1983: Substantive Due Process (*Monell*)**
5. **Cal. Gov. Code § 52.1 (Bane Act)**
6. **Cal. Gov. Code § 845.6 (Failure to Summon Medical Care)**
7. **Negligence**
8. **Negligence: Negligent Training and Supervision**
9. **Negligence: Negligent Mishandling of Remains**
10. **Breach of Contract**
11. **Wrongful Death**

**DEMAND FOR JURY TRIAL**

individual capacities; MEDICAL EXAMINER-CORONER DOES 1-15 in their individual capacities,

    Defendants.

## INTRODUCTION

1.    On September 9, 2022, Amanda Bews ("Amanda") died at the age of 29 in the custody and care of the Los Angeles Century Regional Detention Facility ("CRDF").  Amanda's death was caused by County employees' failure to adequately prevent and treat Amanda for alcohol and drug withdrawal—conditions the County and its employees were fully on notice that Amanda would suffer after being taken into custody on September 7, 2022.  Amanda was forthcoming with medical staff and deputies alike regarding her recent and heavy alcohol use and dependence as well as recent heroin use.

2.    At the time of her arrest, Amanda was in the throes of addiction and suffering homelessness.  Her addiction issues primarily began after falling ill with Guillain-Barre syndrome ("GBS").  As part of her recovery,[1] she was prescribed prescription medications, which led to the exacerbation of her alcoholism but also led to addiction to other drugs such as oxycontin and later, heroin.

3.    Amanda had hopes of conquering her addiction and spending time with her family members, and especially her children, in the future.  Amanda left behind several family members, including her mother, stepfather, siblings, and her two minor children.

4.    After Amanda's death, the County and a private funeral home, Chapel of Light, mishandled Amanda's remains, causing horrible decomposition which her mother Melinda Bettencourt witnessed and will never forget.

---

[1] Amanda did ultimately fully recover from GBS.

5.     Plaintiffs seek accountability for Defendants' conduct in causing Amanda's suffering and ultimate death as well as their carelessness with respect to Amanda's remains, causing her mother extreme anguish.

6.     Plaintiffs request a jury trial to pursue justice on these claims, which are as follows:

| Count | Claim | Parties |
|-------|-------|---------|
| 1 | 42 U.S.C. § 1983: Deliberate Indifference | Plaintiffs R.E.H. and A.S.R. As Successors-In-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does |
| 2 | 42 U.S.C. § 1983: Substantive Due Process | Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against Defendants County, Villanueva, Henderson, Hong, County Does |
| 3 | 42 U.S.C. § 1983: Deliberate Indifference (*Monell*) | Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against Defendant County |
| 4 | 42 U.S.C. § 1983: Substantive Due Process (*Monell*) | Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against Defendant County |
| 5 | Cal. Gov. Code § 52.1 (Bane Act) | Plaintiffs R.E.H. and A.S.R. As Successors-In-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does |

| 6 | Cal. Gov. Code § 845.6 (Failure to Summon Medical Care) | Plaintiffs R.E.H. and A.S.R. As Successors-In-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does |
|---|---|---|
| 7 | Negligence | Plaintiffs R.E.H. and A.S.R. As Successors-In-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does |
| 8 | Negligence: Negligent Training and Supervision | Plaintiffs R.E.H. and A.S.R. As Successors-In-Interest Against Defendants County, Villanueva, Henderson, Hong, Doe Deputy Supervisors |
| 9 | Negligence: Negligent Mishandling of Remains | Plaintiff Melinda Bettencourt As An Individual Against County; Medical Examiner Does; Chapel of the Light; Chapel of the Light Does |
| 10 | Breach of Contract | Plaintiff Melinda Bettencourt As An Individual Against Chapel of the Light; Chapel of the Light Does |
| 11 | Wrongful Death | Plaintiffs R.E.H., and A.S.R. As Individuals Against Defendants County, Villanueva, Henderson, Hong, County Does |

/ / /

/ / /

4

COMPLAINT

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert causes of action for constitutional violations arising under 42 U.S.C. § 1983.

8.    The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In accordance with the requirements of the California Tort Claims Act (Cal. Gov. Code §§ 810-996.6), Plaintiffs filed timely tort claims against the County of Los Angeles and its employees under Cal. Gov. Code § 900.4 on behalf of Melinda Bettencourt, A.S.R, and the Estate of Amanda Bews on January 20, 2022 and on behalf of R.E.H. on February 23, 2023.  County Counsel notified Plaintiff R.E.H. that his tort claim was "rejected by operation of law on May 16, 2023."  County Counsel has not responded to the claim filed on behalf of Melinda Bettencourt, A.S.R, and the Estate of Amanda Bews on January 20, 2022.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs' claims arise out of events and omissions occurring in the County of Los Angeles, which is situated in the Central District of California. Venue is also proper in this District pursuant to 28 U.S. Code § 1391(b)(1) because, on information and belief, all defendants are residents of California and at least one, including Defendant Sheriff Villanueva, is a resident of the Central District of California.  Defendant Fresno Cremation Company d/b/a Chapel of the Light ("Chapel of the Light") is incorporated in California and thus "resides" in California for purposes of venue.

## PARTIES

10.    Plaintiffs A.S.R. and R.E.H. are the minor children of decedent Amanda Bews.  In addition to suing individually for personal damages arising from the loss of their mother, Plaintiffs A.S.R. and R.E.H. sue as Amanda's successors-in-interest to prosecute all claims surviving Amanda's death pursuant to

Cal. Civ. Code § 377.30.  *See* Exhibit A, Affidavit by Melinda Bettencourt, grandmother and guardian ad litem for A.S.R; *see* Exhibit B, Death Certificate; *see* Exhibit C, Affidavit by Robert Hamby, father of and guardian ad litem for R.E.H.

11.    Plaintiffs A.S.R. and R.E.H. proceed in this action through their guardians, Melinda Bettencourt and Robert Hamby respectively, pursuant to Federal Rule of Civil Procedure 17(c)(1)(A).  Guardians ad litem for A.S.R. and R.E.H. have no conflicts of interest.

12.    The action on behalf of the Estate of Amanda Bews is brought through Plaintiffs A.S.R. and R.E.H. as Amanda's successors-in-interest.

13.    Plaintiff Melinda Bettencourt is the mother of decedent Amanda Bews.  Plaintiff Melinda Bettencourt sues individually for personal damages arising from losing her daughter and the mishandling of her daughter's remains.

14.    Defendant County of Los Angeles (hereinafter "County") is a governmental entity organized and existing under the laws of the State of California.  Defendant County operates and manages the Los Angeles County Jails, including the Century Regional Detention Facility ("CRDF") where Amanda died. Defendant County is and was, at all relevant times, responsible for the policies, procedures, practices, and customs at CRDF as well as the actions and inaction of CRDF employees, contractors, and/or agents.  Defendant County also operates and manages the County agencies Los Angeles County Department of Health Services ("DHS") and the Integrated Correctional Health Services ("ICHS") which operates within DHS.  DHS and ICHS provide medical services within the County jails, including CRDF.  Defendant County also operates, manages, and controls the Los Angeles County office of the Medical Examiner-Coroner.  The County office of the Medical Examiner-Coroner was responsible for conducting Amanda Bews' autopsy and handling her remains prior to transfer to next of kin.

15.    CRDF is owned and operated by Defendant County and staffed by County employees, agents, and contractors.

16.    Defendant Alex Villanueva ("Villanueva") was at all relevant times the Sheriff for the County of Los Angeles, the highest position at the Sheriff's Department.  In his capacity as Sheriff, Villanueva was a final policymaker for the Sheriff's Department and for the County on matters relating to the Sheriff's Department, CRDF, and its deputies, employees, and agents.  He was also responsible for the County's compliance with state and federal laws and constitutions and for the training and supervision of County employees and agents. On information and belief, Defendant Villanueva resides within the Central District of California.

17.    Defendant Sean Obrien Henderson, MD ("Henderson") was employed by the County as the Chief Medical Officer at CRDF and was responsible for overseeing the provision of medical care at CRDF.  He was responsible for and oversaw the development and implementation of peer review, quality assurance, utilization review, and clinical policies and procedures.  All medical providers at the CRDF worked under Dr. Henderson's direction.  He is sued in his individual capacity for his failure to properly treat Amanda, failure to properly oversee Amanda's care, and failure to supervise other medical staff in caring for Amanda. Defendant Henderson was also the treating physician for Amanda Bews while she was in custody at CRDF.  On information and belief, Defendant Henderson resides in Los Angeles County, within the Central District of California.

18.    Defendant Tri Hong, RPh was employed by the County as a registered pharmacist and was involved with Amanda Bews's treatment while she was in custody at CRDF.

19.    Fresno Cremation Company d/b/a Chapel of the Light ("Chapel of the Light") is a California corporation operating as a funeral home, which was responsible for taking custody of, transporting, and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains.

20.     Defendant Chapel of the Light Does 1-10 ("Chapel of the Light Does") are all employees, agents, or contractors for Defendant Chapel of the Light who were responsible for taking custody of, transporting, and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains.  Chapel of the Light Does were acting within the scope of their employment at all times relevant to the events described in this Complaint.

21.     Defendant Deputy Does 1-20 ("Doe Deputies") are all Los Angeles Sheriff's Department deputies employed by the County and working at CRDF who were responsible for screening and intake, housing placement, summoning medical care, observing any audio or video monitors, or conducting wellness or safety checks on Amanda in any housing unit in which Amanda was housed from September 7, 2022 to September 9, 2022.  Doe Deputies include the deputies responsible for conducting safety checks and monitoring the health and wellbeing of detainees housed in Module 1400, Pod 3.  Doe Deputies were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

22.     Defendant Deputy Supervisor Does 1-10 ("Doe Deputy Supervisors") are Los Angeles Sheriff's Department deputies who were responsible for training and supervising Doe Deputies.  Doe Deputy Supervisors were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

23.     Defendant Medical Providers Does 1-20 ("Doe Medical Providers") are all County employees, agents, or contractors working within the CRDF who were responsible for Amanda's medical care, including intake, screening, follow-up assessments, and referrals for further treatment, whether or not they actually provided Amanda with any medical care.  Doe Medical Providers include the providers responsible for conducting safety checks and monitoring the health and wellbeing of detainees housed in Module 1400, Pod 3 while Amanda was in

custody.  In particular, Doe Medical Providers include those providers who were responsible for performing but who failed to perform a medical check between approximately 12:09 a.m. and 4:30 a.m. on September 9, 2022.  Doe Medical Providers include the providers who "cleared [Amanda] for detox" and determined she "required no medications" at approximately 12:09 a.m. on September 9, 2022.  Doe Medical Providers were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

24.     Doe Deputies, Doe Deputy Supervisors, and Doe Medical Providers will hereinafter (as well as in the table above) collectively be referred to as "County Does."  County Does are sued in their individual capacities for the purposes of claims arising under § 1983 and as County employees for the purposes of claims arising under state law.

25.     Defendant Medical Examiner-Coroner Does 1-15 ("Medical Examiner Does") are all County employees, agents, or contractors working at the office of the Los Angeles Medical Examiner-Coroner who were responsible for taking custody of, transferring custody of, transporting, and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains.

26.     Plaintiffs are ignorant of the true names of all Does despite due diligence and will amend the Complaint to add their true names upon learning them.

## FACTUAL ALLEGATIONS

### A. Amanda's Pain, Suffering, and Death In Custody

27.     On September 7, 2022, Amanda Bews was arrested on suspicion of shoplifting at a Bev Mo store in Santa Clarita, California.  She was alleged to have committed two misdemeanors.  At the time of her arrest, Amanda admitted recent heroin use and on information and belief, also told officers she had been drinking alcohol.

28.     Amanda was detained and transported by Los Angeles Sheriff's deputies to Henry Mayo Newhall Memorial Hospital to be cleared for booking into jail.

29.     At the hospital, Amanda was forthcoming with hospital staff.  She reported having consumed "a fifth to a handle a day" for the past six years and that she last drank alcohol "just prior" to her arrest.  Hospital staff noted these statements in her chart as well as "prolonged heavy drinking."  She was diagnosed with alcohol abuse.

30.     Medical staff then released her, with a copy of her "ER summary and ER MD dictation," to the Los Angeles Sheriff's Department for booking into jail. These documents would have included Amanda's history of alcohol dependence and heavy recent use.

31.     In her ED Summary Report, the "disposition" is listed as "TO ACUTE CARE FACILITY," indicating that Amanda should have received acute care (meaning consistent monitoring and inpatient treatment) at the jail she would be booked into.

32.     "According to the World Health Organization (WHO), acute care 'includes the health system components, or care delivery platforms, used to treat sudden, often unexpected, urgent or emergent episodes of injury and illness that can lead to death or disability without rapid intervention.'" [2]  "In an acute care setting, you remain under constant, round-the-clock care." [3]

33.     Amanda was discharged from the hospital at 12:21 a.m. on September 8, 2022 and thereafter transported to CRDF by the Sheriff's Department.

---

[2] *See* Sprott Shaw College, *What is Acute Care? (And Palliative Care vs Hospice)*, available at: https://sprottshaw.com/blog/what-is-acute-palliative-hospice-care/.
[3] *See* Sulkowski Family Medicine, *What Is Acute Care and When Do I Need It?*, available at: https://www.sulkowskifamilymedicine.com/blog/what-is-acute-care-and-when-do-i-need-it.

34.     Amanda was then booked into the CRDF where she underwent a medical evaluation and was cleared for housing.

35.     Upon booking, staff at the jail were aware that Amanda had at least alcohol dependence and recent heavy alcohol consumption as well as recent heroin use.  On information and belief, jail staff were also aware that Amanda had a history of prescription opiate abuse.

36.     At 2:56 p.m. on September 8, 2022, Amanda was housed in a shared cell in Module 1400, Pod 3, cell 45.

37.     On information and belief, deputies and medical staff, including Doe Deputies and Doe Medical Providers, did not adequately monitor Amanda's health and well-being while she was housed in Module 1400.

38.     At 12:09 a.m. on September 9, 2022, Amanda "was cleared for detox and required no medications."  Accordingly, staff stopped treating Amanda for detoxification and withdrawal which are well known to cause serious illness and death if untreated.

39.     This is particularly true as to alcohol withdrawal, which requires early, aggressive treatment and close monitoring to avoid death.

40.     The 12:09 a.m. medical check was the "last known" medical check.

41.     Amanda was not monitored or checked on again by medical staff until 4:30 a.m.

42.     On information and belief, deputies also did not check on Amanda during this time, as her condition would have obviously deteriorated.  Or, if deputies had, they failed to summon medical care during this time despite her deterioration.

/ / /

/ / /

43.     At 4:30 a.m., when a nurse (unknown female Medical Provider Doe) was conducting her routine rounds, she noticed that Amanda was not responsive to her calls and her cellmate was unable to rouse her.

44.     The nurse notified deputies and medical staff of the emergency and resuscitative measures were taken until Los Angeles County Fire Department personnel arrived on scene to take over.

45.     Responders administered three doses of Narcan and used the defibrillator in an attempt to revive her.

46.     Amanda was pronounced dead at 5:29 a.m.

47.     At the time of her death, Amanda showed signs of dehydration and had vomit in her airway.

48.     Based on the toxicology results, Amanda did not die of acute drug intoxication or drug overdose.

49.     Rather, Amanda died of untreated or inadequately treated effects of withdrawal from alcohol and drugs.

50.     On information and belief, Dr. Henderson and Dr. Hong failed to administer correct medication in adequate dosages to avoid the dire effects of withdrawal Amanda suffered.  Specifically, on information and belief, Dr. Henderson and Dr. Hong failed to administer sufficient dosages of Librium or similar medication.

51.     It is well-known amongst members of the public and medical professionals alike that individuals with alcohol use disorder (AUD) are at risk of developing alcohol withdrawal syndrome (AWS) upon cessation of alcohol use due to their bodies' dependence on the substance.

/ / /

/ / /

/ / /

/ / /

52.     These risks "are amplified in the correctional setting where *newly incarcerated* inmates with AUD are at *high* risk for developing AWS."[4]  The prevalence of AUD is higher in the correctional setting than in the community.[5]

53.     As a result, it is imperative that medical providers and officers within jails such as CRDF use care to evaluate and closely monitor newly incarcerated detainees with known AUD such as Amanda.

54.     Organizations such as the Federal Bureau of Prisons, the World Health Organization, and the National Commission on Correctional Healthcare provide guidelines and standards regarding the provision of care for individuals undergoing withdrawal while in custody and urge jails to implement sufficient protocols.  The consensus amongst medical professionals is that withdrawal from alcohol or drugs should be *medically supervised*.

55.     Again, it is not uncommon for individuals who have used drugs or alcohol prior to arrest to suffer dangerous symptoms of withdrawal beginning in custody.  Further, in-custody deaths from alcohol or drug withdrawal are frequently in the news or the subject of publicized research or reports by government entities.[6]

---

[4] *See* Ibrahim K. Muradian, Nazia Qureshi, Jimmy Singh, Cindy H. Lin, Sean O. Henderson, *Risk factors for alcohol withdrawal-related hospital transfer in a correctional setting*, available at: https://www.sciencedirect.com/science/article/abs/pii/S074183292300215Xl (emphasis added).

[5] *Id*.

[6] *See, e.g.*, CT Insider, Liz Hardaway, *Report: Man died from drug withdrawal while in Manchester police custody*, available at: https://www.ctinsider.com/news/article/manchester-police-custody-death-inspector-general-17910886.php; Mother Jones, Julia Lurie, *Go to Jail. Die From Drug Withdrawal. Welcome to the Criminal Justice System.*, available at: https://www.motherjones.com/politics/2017/02/opioid-withdrawal-jail-deaths/; J Law Health, Carleton DR., *Death by Detox: Substance Withdrawal, a Possible*

56.     Accordingly, the County and jail staff, including County Does, were on notice that Amanda would suffer from withdrawal upon incarceration.  They were also aware of the risks of untreated and unsupervised withdrawal.

57.     On information and belief, County Does failed to perform timely, adequate wellness checks on Amanda and failed to summon medical care despite obvious, serious medical conditions.

58.     County Does violated policies and procedures and established law in their actions and omissions.

59.     For example, on information and belief, County Does violated Cal. Code Regs. Tit. 15, § 1027.5 which require sworn staff such as Doe Deputies to conduct safety checks of incarcerated persons "through direct visual observation" with no more than a 60-minute lapse between safety checks.  These checks must also be documented.

60.     In fact, the Los Angeles County Sheriff's Department Custody Division Manual requires more frequent checks in many types of housing areas: such as 30-minute checks for "cells," dorms without unobstructed visual observation, medical/infirmary, Moderate Observation Housing (MOH), High Security, and Sobering Cells.  The Manual requires 15-minute checks for High Observation Housing (HOH) / Forensic In-Patient (FIP) areas.  *See* Custody Division Manual: 4-11/030.00 Inmate Safety Checks.

61.     Further, supervisors such as Deputy Supervisor Does are required to conduct unannounced checks in each housing area at least once per shift to ensure safety checks are conducted and documented properly.  *See* Custody Division

_____

*Death Row for Individuals in Custody*, available at: https://pubmed.ncbi.nlm.nih.gov/37585551/#:~:text=Suffering%20through%20substance%20withdrawal%20is,hands%20of%20the%20justice%20system; Bureau of Justice Assistance, *Managing Substance Withdrawal in Jails: A Legal Brief*, https://bja.ojp.gov/doc/managing-substance-withdrawal-in-jails.pdf.

Manual: 4-11/030.00 Inmate Safety Checks.  On information and belief, Deputy Supervisor Does also failed to comply with this provision.

62.     Further, the California Code of Regulations Title 15 Minimum Standards for Local Detention Facilities require jails implement a medical detoxification system that "systematically and safely withdraws people from addicting drugs, usually under the care of a physician."[7]  "Drinking alcohol or using prescribed and/or illicit drugs can cause physical and/or psychological dependence over time and stopping them can result in withdrawal symptoms in people with this dependence.  The detoxification process is designed to treat the immediate bodily effects of stopping drug use that may be life-threatening."

63.     Defendants County, Villanueva, Henderson, Hong, and County Does violated the above minimum standards by failing to have in place a proper detoxification protocol.

64.     Title 15, § 1056 also prescribes the use of sobering cells for intoxicated detainees, which would have required jail staff to perform intermittent direct visual observation of Amanda no less than every half hour had she been properly housed in a sobering cell.  On information and belief, she was not.

**B. The County's Long History of Deliberate Indifference to Detainees' Health and Constitutional Rights**

65.     Many detainees have died in the custody of Los Angeles County jails over the years.

---

[7] Available at: https://www.bscc.ca.gov/wp-content/uploads/Attachment-C-Title-15.pdf.

66.     On April 21, 2022, the Los Angeles County Sheriff Civilian Oversight Commission "noted an increasing number of in-custody deaths."[8]  In fact, the number of in-custody deaths more than doubled between 2016 and 2021.[9]

67.     Defendant County, by and through its employees, agents, and contractors, acted pursuant to the following official policies, or widespread or longstanding practices or customs, of Defendants County:

    a.  Failing to recognize when a detainee has serious medical needs during intake screening;

    b.  Failing to properly house detainees to provide adequate medical monitoring;

    c.  Failing to communicate detainees' medical needs between medical staff and deputies;

    d.  Providing insufficient medical care to detainees;

    e.  Failing to transfer detainees to the hospital when medically necessary;

    f.  Failing to respond properly or timely to serious medical needs of detainees;

    g.  Failing to conduct timely safety, medical, or welfare checks;

    h.  Failing to monitor live video feeds for signs of medical distress;

    i.  Failing to respond properly to detainees exhibiting drug or alcohol overdose or withdrawal;

    j.  Failing to recognize when a detainee has serious medical needs during safety checks;

---

[8] Staff Report, In-Custody Deaths in Los Angeles County Sheriff's Department Facilities, available at: https://file.lacounty.gov/SDSInter/bos/supdocs/StaffReport-3bLASDIn-CustodyDeaths4.12.2022.pdf.
[9] *Id.*

      k.   Failing to meet accepted community standards of care with respect to medical care of detainees; and

      l.   Failing to properly investigate in-custody deaths and properly respond to the results of those investigations to prevent further deaths.

      m. Failing to cure chronic understaffing.

68.    Further, Defendant Dr. Henderson has a long history and reputation of poor treatment of patients and other staff at the Los Angeles County jails.[10] "Some current and former medical staff members describe a working environment that is dysfunctional, abusive and detrimental to providing health care. One county health care worker calls the situation in the jails a daily "human rights disaster."[11]

69.    In 2021, a staff physician wrote an anonymous letter to County Supervisor Hilda Solis and Sheriff Alex Villanueva which stated in part that Defendant Henderson is "well known for being abusive of his authority and power" and brought with him a "tradition and history of hostility and dysfunction" when he became the Chief Medical Officer.[12]

70.    Accordingly, the County and Villanueva were aware of a dire situation in their jails, but failed to change current policies or practices or implement new policies and practices to address deficiencies placing detainees in danger.

/ / /

/ / /

---

[10] LAist, *A Daily 'Human Rights Disaster': LA Jail Medical Staff Outraged By Jail Conditions And The Doctor In Charge*, available at: https://laist.com/news/criminal-justice/los-angeles-county-jail-medical-staff-outraged-by-jail-conditions.

[11] *Id.*

[12] *Id.*

**C. The County's and Chapel of the Light's Mishandling of Amanda's Remains.**

71.     After Amanda's death, Defendant County took custody of Amanda's remains for the purposes of performing an autopsy prior to transferring her remains to her next of kin.

72.     Defendant County and Medical Examiner-Coroner Does were responsible for taking custody of, transferring custody of, transporting, and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains.

73.     Defendants Medical Examiner-Coroner Does failed to use the standard of care a reasonably careful person working at a medical examiner's office would use to handle human remains prior to transfer to their loved ones' family members.  A reasonably careful employee of a medical examiner's office would at minimum properly refrigerate the remains.

74.     On information and belief, Defendants Medical Examiner-Coroner Does failed to properly handle Amanda's remains and failed to properly refrigerate the remains.

75.     Upon completion of the autopsy and transfer of the remains to Chapel of the Light, Amanda's remains had deteriorated significantly.

76.     The County transferred custody of the remains to Chapel of the Light, but Chapel of the Light allowed Amanda's remains to further deteriorate.

77.     Plaintiff had entered into a contract with Chapel of the Light and thereby, Chapel of the Light Does, for funeral services for her daughter Amanda.  These services included non-declinable services of the funeral director and staff, transfer of the remains to the funeral home, refrigeration, and identification viewing.

78.     Chapel of the Light and Chapel of the Light Does failed to uphold their end of the contract and Plaintiff suffered extreme emotional distress when she

learned of Amanda's severe decomposition.  Plaintiff suffered further mental anguish, shock, and grief at viewing Amanda's horribly decomposed remains.

## I.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983: Fourteenth Amendment Deliberate Indifference**

**(By Plaintiffs A.S.R. and R.E.H. As Successors-in-Interest Against Defendants Henderson, Hong, County Does)**

79.    Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

80.    Plaintiffs allege this cause of action as Amanda's successors-in-interest.

81.    The actions and omissions by Defendants constituted objective and subjective deliberate indifference to Amanda's medical needs and unsafe conditions of confinement.  Defendants' actions and omissions violated the due process clause of the Fourteenth Amendment prohibiting deprivation of life without due process of law.

82.    Defendants made intentional decisions and omissions regarding Amanda's conditions of confinement and the denial of adequate medical care, including but not limited to:

    a.  Accepting Amanda into the jail despite knowing she was at high risk of serious illness or death from alcohol withdrawal and potentially drug detoxification;

    b.  Deciding not to house Amanda in a proper unit or cell that would have allowed for proper medical treatment and observation;

    c.  Failing to monitor Amanda after she was known to have consumed a large amount of alcohol daily, including the day of her arrest, resulting in a high risk she would suffer life-threatening withdrawal;

   d.  Failing to timely and adequately check on Amanda's safety and wellbeing while she was in her cell;

   e.  On information and belief, failing to timely summon medical care in the face of obvious signs that Amanda's health was deteriorating dangerously;

   f.  On information and belief, failing to timely and adequately document information regarding Amanda's condition in the jail information system; and

   g.  Failing to take appropriate measures to ensure Amanda was receiving adequate and prompt medical care.

83.  Defendants' intentional decisions and omissions put Amanda at substantial risk of suffering serious harm.

84.  Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved—making the consequences of the defendants' conduct obvious.

85.  As alleged above, Defendants' conduct and omissions constituted various policy violations.

86.  Defendants' deliberate indifference was an actual and proximate cause of Plaintiffs' damages including both Amanda's pain and suffering prior to her death and her death.  Plaintiff seeks compensatory damages.

87.  Plaintiff also seeks punitive damages against the individual defendants on the grounds that Defendants acted with deliberate and reckless disregard of Amanda's constitutional rights.

88.  Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

/ / /

/ / /

## II.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process

### (By Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against

### Defendants County, Villanueva, Henderson, Hong, County Does)

89.     Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

90.     Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R., as individuals, allege this Fourteenth Amendment substantive due process claim against Defendants for depriving them of their rights to companionship and society with Amanda.

91.     While Amanda was in their custody and care, Defendants had adequate time to reflect and reason prior to acting or failing to act.  Because Amanda's health deteriorated over the span of more than a day, actual deliberation was practical.

92.     Yet, Defendants' actions and omissions constituted objective deliberate indifference to Amanda's medical needs and unsafe conditions of confinement.

93.     Plaintiffs specifically incorporate by reference here, as alleged in the above cause of action, the myriad ways in which Defendants made intentional decisions and omissions regarding Amanda's conditions of confinement and their denial of adequate medical care.

94.     Defendants' deliberate indifference was an actual and proximate cause of Plaintiffs' economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support.  Plaintiffs seek compensatory damages.

95.     Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Amanda's constitutional rights.

96.     Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

### III.

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983: Fourteenth Amendment Deliberate Indifference (*Monell*)**

**(By Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against Defendant County)**

97.     Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

98.     Defendant County was acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as deputies and employees of the County.

99.     As alleged above, Defendants County, by and through their employees, agents, and contractors, deprived Amanda of her constitutional rights under the due process clause of the Fourteenth Amendment prohibiting deprivation of life without due process of law.

100.     Defendants County, by and through their employees, agents, and contractors, acted pursuant to the following official policies, or widespread or longstanding practices or customs, of Defendants County:

     a.   Failing to recognize when a detainee has serious medical needs during intake screening;

     b.   Failing to properly house detainees to provide adequate medical monitoring;

     c.   Failing to communicate detainees' medical needs between medical staff and deputies;

     d.   Providing insufficient medical care to detainees;

     e.   Failing to transfer detainees to the hospital when medically necessary;

f.  Failing to respond properly or timely to serious medical needs of detainees;

g.  Failing to conduct timely safety, medical, or welfare checks;

h.  Failing to monitor live video feeds for signs of medical distress;

i.  Failing to respond properly to detainees exhibiting drug or alcohol overdose or withdrawal;

j.  Failing to recognize when a detainee has serious medical needs during safety checks;

k.  Failing to meet accepted community standards of care with respect to medical care of detainees; and

l.  Failing to properly investigate in-custody deaths and properly respond to the results of those investigations to prevent further deaths.

m. Failing to cure chronic understaffing.

101.  Defendant County knew of a substantial risk that its polices were inadequate to prevent violations of law by its employees and agents.  Defendant was deliberately indifferent to this risk and the well-documented history of widespread unconstitutional acts by employees and agents at the jail.  Yet, Defendant failed to set forth appropriate policies regarding the treatment of detainees.

102.  Defendant County is also liable in that Amanda's death was also the result of a failure to train their employees, contractors, and agents to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and how to summon and provide adequate medical care when necessary.

103.  The County knew its failure to adequately train its staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would deprive detainees of constitutionally protected rights and result in

additional deaths.  The County was deliberately indifferent to the rights of individuals in its custody and care as evidenced by its knowledge of disparately high rates of in-custody deaths and/or injuries or illness, systemic failures, and the fact that the individual deputies and medical providers who they failed to properly train would come into contact with detainees.  The inadequacy of the County's training actually caused Amanda's constitutional deprivations.

104.   Defendant County also acted through and is liable by virtue of its final policymakers, such as Defendant Villanueva, and/or his subordinates who had been delegated final policymaking authority.  Defendant County's final policymakers, including Villanueva, and/or his subordinates were acting under color of state law.  Their final policymaking authority concerned all constitutional violations described in this Complaint.

105.   Defendant County is also liable based on Villanueva's failure to enact new and different policies despite their knowledge of woefully inadequate care of past detainees, a high rate of substance use prior to booking, and a high rate of in-custody deaths at the Los Angeles County jails.

106.   Defendant County is also liable based on their ratification and approval of the constitutional, statutory, and other law violations as alleged in this Complaint.

107.   Defendant County's policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees, caused Amanda's deprivation of rights by the individual defendants.  That is, Defendant's policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees were so closely related to Amanda's deprivation of rights that they were the moving force causing Amanda's injury and death.

108.   Defendant County's actions and omissions actually and proximately caused Plaintiffs' economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support.  Plaintiffs seek compensatory damages.

109.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Amanda's constitutional rights.

110.   Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## IV.

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process (*Monell*) (By Plaintiffs Melinda Bettencourt, R.E.H., and A.S.R. As Individuals Against Defendant County)

111.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.  Plaintiffs specifically repeat and incorporate by reference the *Monell* theories of liability set forth in the above cause of action in particular, in support of this claim.

112.   Defendant County was acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as deputies and employees of the County.

113.   As alleged above, Defendant County, by and through its employees and agents, deprived Plaintiffs of their rights to companionship and society with Amanda, in violation of the Fourteenth Amendment.

114.   Defendant County's actions and failures to act actually and proximately caused Plaintiffs' economic and non-economic damages including loss of love, companionship, society, comfort, care, assistance, protection, and moral support.  Plaintiffs seek compensatory damages.

115.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Amanda's constitutional rights.

## V.

### FIFTH CAUSE OF ACTION

### Cal. Gov. Code § 52.1 (Bane Act)

### (By Plaintiffs R.E.H. and A.S.R. as Successors-in-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does)

116.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

117.   Pursuant to Cal. Gov. Code § 377.30, Plaintiffs assert this claim as successors-in-interest.

118.   As alleged above, Defendants acted, or failed to act, with deliberate indifference to the substantial risk to Amanda's health and safety while she was in their custody and care.  Defendants' due process violations are sufficient in and of themselves to constitute violations of the Bane Act.

119.   "Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials 'knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening,' such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations." *Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018).

120.   As alleged above, Defendants knowingly deprived Amanda of constitutionally protected rights through inherently coercive and threatening acts and omissions such as when they accepted her for booking despite the grave risks of alcohol withdrawal, failed to execute a proper treatment plan, failed to summon medical care, failed to provide Amanda with adequate medical care, and failed to conduct adequate and timely safety checks.

121.   Defendants' deliberate indifference was an actual and proximate cause of Amanda's pain, suffering, and death, which were a direct and foreseeable result of Defendants' actions and inaction.

122.   Plaintiffs seek compensatory damages including for the pain and suffering Amanda was subjected to prior to her death pursuant to Cal. Civ. Proc. § 377.34(b).  Plaintiffs also seek all statutory remedies available pursuant to Cal. Civ. Code § 52 and 52.1 including civil penalties, treble damages, and attorneys' fees.

123.   Pursuant to Cal. Gov. Code § 815.2, the County is vicariously liable for the actions and/or omissions of its employees, contractors, or agents, Defendants Villanueva, Henderson, Hong, County Does because they were acting within the scope of their employment.

## VI.

## SIXTH CAUSE OF ACTION

## Cal. Gov. Code § 845.6 (Failure to Summon Medical Care)

## (By Plaintiffs R.E.H. and A.S.R. as Successors-in-Interest Against Defendants County, Henderson, Hong, County Does)

124.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

125.   Plaintiffs assert this claim as successors-in-interest pursuant to Cal. Civ. Proc. § 377.30.

126.   On information and belief, Defendants:

    a.   Knew or had reason to know that Amanda required medical care;

    b.   Knew or had reason to know that Amanda's need for medical care was immediate; and

    c.   Failed to take reasonable action to summon medical care.

127.   Regarding (a), Defendants Henderson, Hong, and County Does knew or had reason to know that Amanda required medical care for a multitude of reasons, including but not limited to recent, heavy, sustained alcohol use and dependence as well as suspected recent drug use.

128.   Regarding (b), Defendants Henderson, Hong, and County Does knew or should have known Amanda's need for medical care was immediate because of the circumstances described above.

129.   Regarding (c), Defendants Henderson, Hong, and County Does failed to take reasonable action to summon medical care by: booking Amanda into jail instead of sending her back to the hospital despite signs she was at substantial risk of serious illness or death due to alcohol withdrawal and by failing to summon medical care throughout her time in custody despite signs of illness and high risk of death, and despite Amanda not being checked on by medical staff for several hours prior to her death.

130.   Pursuant to Cal. Gov. Code §§ 845.6 and 815.2, Defendant County is liable because Defendants Henderson, Hong, and County Does were at all times acting within the scope of their employment.

131.   Defendant Henderson is liable for his personal involvement and failing to summon medical care as Amanda's treating physician.  He is also liable for County Deputies' failure to summon medical care, as described above, and due to his negligent supervision and training of employees regarding when to summon medical care.

132.   Defendants are not immune from liability pursuant to Cal. Gov. Code § 844.6, which is inapplicable to allegations for failure to summon medical care arising under § 845.6.  *See Hart v. Orange Cnty.*, 254 Cal. App. 2d 302, 306 (Ct. App. 1967); *Sanders v. Yuba Cnty.*, 247 Cal. App. 2d 748, 754 (Ct. App. 1967); *Greer v. Cnty. of San Diego*, No. 19CV378-JO-DEB, 2023 WL 2316203, at *15

(S.D. Cal. Mar. 1, 2023) (stating § 845.6 claims for failure to summon medical care are excepted from § 844.6's grant of immunity).

133.   Defendants' conduct was an actual and proximate cause of Amanda's pain, suffering, and death, which were direct and foreseeable results of Defendants' conduct.

134.   Plaintiffs seek compensatory damages for Amanda's pain and suffering prior to her death, *see* Cal. Civ. Proc. § 377.34(b), as well as damages for her death.

## VII.
## SEVENTH CAUSE OF ACTION
### Negligence
**(By Plaintiffs R.E.H. and A.S.R. as Successors-in-Interest Against Defendants County, Villanueva, Henderson, Hong, County Does)**

135.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

136.   Plaintiffs allege this claim as successors in interest pursuant to Cal. Civ. Proc. § 377.30.

137.   All individual defendants owed Amanda a duty of reasonable care as "jailers" due to Amanda's position of dependence and vulnerability in the jail context.

138.   As alleged above, Defendants breached that duty.  County Does negligently failed to recognize, document, and properly monitor Amanda's serious medical needs and failed to summon medical treatment.  County Does failed to provide and place Amanda in proper housing to ensure proper monitoring of Amanda's medical needs.  County Does violated multiple County policies applicable to deputies and medical staff as alleged above.

139.   Defendants Villanueva and Henderson negligently failed to ensure that all detainees exhibiting signs of intoxication, withdrawal, or medical distress

receive proper medical care, including an appropriate treatment plan, adequate evaluation and treatment by a physician, timely welfare checks, and continuity of care despite their knowledge of woefully inadequate care of past detainees, a high rate of substance use prior to booking, and a high rate of in-custody deaths.

140.   Defendant Hong negligently failed to ensure that Amanda was receiving the correct medication to safely treat alcohol and drug withdrawal.

141.   All individual defendants failed to avoid violating Plaintiff's constitutional rights pursuant to the Fourteenth Amendment as alleged above.

142.   The County is vicariously liable for the conduct of Defendants Villanueva, Henderson, Hong, and County Does because they were at all times acting within the scope of their employment.

143.   Pursuant to Gov. Code § 855.8, the individual defendants, who were acting within the scope of their employment, are liable for failing to use due care and proximately causing Amanda's injuries due to their negligence and wrongful acts and omissions in providing such treatment.

144.   Amanda's injury and death were foreseeable results of Defendants' negligence.

145.   Defendants' negligence was the actual and proximate cause of Amanda's pain, suffering, and ultimate death.

146.   Plaintiffs, Amanda's successors-in-interest, seek compensatory damages including for Amanda's pain and suffering prior to her death pursuant to Cal. Civ. Proc. § 377.34(b).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

COMPLAINT

# VIII.

## EIGHTH CAUSE OF ACTION

### Negligence: Negligent Training and Supervision[13]

### (By Plaintiffs R.E.H. and A.S.R. as Successors-in-Interest Against Defendants County, Villanueva, Henderson, Hong, Doe Deputy Supervisors)

147.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

148.   Plaintiffs allege this claim as successors-in-interest pursuant to Cal. Civ. Proc. § 377.30.

149.   Defendants had a duty to use reasonable care in the training and supervision of its employees, deputies, sworn staff, contractors, and agents.

150.   Defendants had a duty to properly train and supervise its employees to use reasonable care in evaluating the health of and risks to detainees and determining the proper and adequate course of treatment for detainees in need of medical treatment.

151.   Defendants had a duty to properly train and supervise its employees to summon medical care for detainees whom they knew, or had reason to know, required medical care.

152.   Defendants failed to train their employees, contractors, and agents to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and how to summon and provide adequate medical care when necessary.

---

[13] Plaintiffs allege the instant claim as a separate cause of action for the sake of clarity, understanding that it constitutes a theory of liability for the overarching tort of negligence.

153.   Defendants knew their failure to adequately train their staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would cause detainees harm and result in additional deaths. Defendants knew of the County's disparately high rates of in-custody deaths, systemic failures, and the fact that the individual deputies and medical providers who they failed to properly train would come into contact with detainees.

154.   Defendants breached their duty of care such that Amanda's prolonged health crisis was deliberately ignored.

155.   The inadequacy of Defendants' training actually caused Amanda's pain, suffering, and death.  Had Defendants trained their employees, agents, and contractors properly, staff would have identified Amanda's need for medical care, furnished and/or summoned requisite care, and Amanda would not have suffered prolonged pain and would still be alive today.

156.   The County is vicariously liable for the conduct of individual defendants in supervisory and training positions who were acting within the scope of their employment: Defendants Villanueva, Henderson, Hong, Doe Deputy Supervisors.

157.   As a direct, proximate, and foreseeable result of Defendants' breach of their duty of care, Plaintiffs suffered damages in an amount according to proof at the time of trial.

158.   Plaintiffs, Amanda's successors-in-interest, seek compensatory damages including for Amanda's pain and suffering prior to her death pursuant to Cal. Civ. Proc. § 377.34(b).

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

# IX.

## NINTH CAUSE OF ACTION

### Negligence: Negligent Mishandling of Remains[14]

### (By Plaintiff Melinda Bettencourt As An Individual Against Defendants County, Medical Examiner-Coroner Does, Chapel of the Light, Chapel of the Light Does)

159.     Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

160.     Plaintiff alleges this claim as individuals.

161.     Defendants owed Plaintiff, Amanda's mother, a duty of reasonable care in taking custody of, transporting, transferring, and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains.

162.     Defendants Medical Examiner-Coroner Does failed to use the standard of care a reasonably careful person working at a medical examiner's office would use to handle human remains prior to transfer to their loved ones' family members.  A reasonably careful employee of a medical examiner's office would at minimum properly refrigerate the remains.

163.     On information and belief, Defendants Medical Examiner-Coroner Does failed to properly handle Amanda's remains and failed to properly refrigerate the remains.

164.     The County is vicariously liable for the conduct of Defendants Medical Examiner-Coroner Does because they were at all times acting within the scope of their employment.

_____

[14] Plaintiff alleges the instant claim as a separate cause of action for the sake of clarity, understanding that it constitutes a theory of liability for the overarching tort of negligence.

165.     Medical Examiner-Coroner Does who were acting within the scope of their employment, are individually liable for failing to use due care and proximately causing Amanda's injuries due to their negligence and wrongful acts and omissions in providing such treatment.

166.     Defendants Chapel of the Light and Chapel of the Light Does owed Plaintiffs a duty to use due care with respect to Amanda's remains pursuant to California Civil Code section 1714 and California case law.

167.     Defendants Chapel of the Light and Chapel of the Light Does also owed Plaintiffs a duty to "refrigerate[] [Amanda's remains] at an approved facility with sufficient capacity" pursuant to California Code of Regulations, Title 16, section 1223(c).

168.     Defendants Chapel of the Light and Chapel of the Light Does failed to use the standard of care a reasonably careful person working at a medical examiner's office would use to handle human remains prior to transfer to their loved ones' family members.  A reasonably careful employee of a medical examiner's office would at minimum properly refrigerate the remains.

169.     In fact, Defendants Chapel of the Light and Chapel of the Light Does were required to do so pursuant to 16 C.C.R. § 1223(c), meaning their failure to do so would constitute negligence per se.

170.     On information and belief, Defendants Medical Examiner-Coroner Does failed to properly handle Amanda's remains and failed to properly refrigerate the remains in violation of their legal duties, including pursuant to 16 C.C.R. § 1223(c).

171.     The decomposition of Amanda's remains was a foreseeable result of Defendants' negligence.

172.     Defendants' negligence was the actual and proximate cause of Plaintiff's serious emotional distress, including suffering, anguish, horror, grief, anxiety, and shock.

173.     Upon learning that Amanda's remains had severely decomposed and upon viewing her remains, Plaintiff Melinda Bettencourt suffered serious emotional distress that an ordinary, reasonable person would be unable to cope with.  Plaintiff suffered extreme anguish, shock, and horror.  After the viewing, she had trouble avoiding thinking about and recalling the images of her daughter in that state and continues to suffer anguish and sleeplessness.

174.     Plaintiff seeks damages for emotional distress.

## X.

### TENTH CAUSE OF ACTION

### Breach of Contract

### (By Plaintiff Melinda Bettencourt As An Individual Against Defendants Chapel of the Light and Chapel of the Light Does)

175.     Plaintiff entered into a contract with Chapel of the Light and thereby, Chapel of the Light Does, for funeral services for her daughter Amanda, including non-declinable services of the funeral director and staff, transfer of the remains to the funeral home, refrigeration, and identification viewing.

176.     There is an implied covenant in all funeral services contracts to provide "appropriate and dignified services of the type that bereaved family members normally anticipate." *Christensen v. Superior Court*, 54 Cal.3d 868, 886 (1991).  Funeral homes and their staff assume "position[s] of special trust toward the family." (*Id.*)

177.     Thus, Defendants were responsible for transporting and properly maintaining Amanda's remains, including handling, preserving, storing, and refrigerating the remains, in such a way that would avoid unreasonable decomposition of the remains.

178.     Plaintiff satisfied all of her obligations pursuant to the contract.

179.     On information and belief, Defendants failed to properly conduct its duties to properly transport, transfer, and maintain Amanda's remains, including

handling, preserving, storing, and refrigerating the remains, such that the remains did not decompose.  On information and belief, Defendants failed to properly refrigerate Amanda's remains as required under the contract and implied covenant.

180.    The decomposition of Amanda's remains was a foreseeable result of Defendants' conduct.

181.    Plaintiff's severe emotional distress was a foreseeable result of Defendant's breach of contract.  *See Allen v. Jones*, 104 Cal.App.3d 207, 211 (1980).

182.    Defendants' breach was the actual and proximate cause of Plaintiff's serious emotional distress, including suffering, anguish, horror, grief, anxiety, and shock.

183.    Upon learning that Amanda's remains had severely decomposed and upon viewing her remains, Plaintiff Melinda Bettencourt suffered serious emotional distress that an ordinary, reasonable person would be unable to cope with.  Plaintiff suffered extreme anguish, shock, and horror.  After the viewing, she had trouble avoiding thinking about and recalling the images of her daughter in that state and continues to suffer anguish and sleeplessness.

184.    Plaintiff seeks damages for breach of contract and emotional distress.

## XI.

## ELEVENTH CAUSE OF ACTION

### Wrongful Death

### (By Plaintiffs R.E.H., and A.S.R. as Individuals Against Defendants County, Villanueva, Henderson, Hong, County Does)

185.    Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

186.    Plaintiffs, as Amanda's children (or "issue"), have standing to assert a claim for wrongful death.  *See* Cal. Civ. Proc. § 377.60.  Plaintiff had no spouse or other issue.  *Id.*

187.     As alleged above, Defendants violated Gov. Code § 845.6, which constitutes "wrongful acts" within the meaning of § 377.60.

188.     As alleged above, Defendants violated § 1983 by showing deliberate indifference to Amanda's medical needs.  This constituted "wrongful acts" within the meaning of § 377.60.

189.     As alleged above, Defendants committed tortious (including negligent) conduct, which constituted "wrongful acts" within the meaning of § 377.60.  *See Lattimore v. Dickey*, 239 Cal.App.4th 959 (2015).

190.     Defendants' conduct constituted actual and proximate causes of Amanda's pain, suffering, and death, which were direct and foreseeable results of Defendants' conduct.

191.     Defendant County is liable for the conduct of the individual defendants who were acting within the scope of their employment with the County. *See* Cal. Gov. Code §§ 815.2, 845.6.

192.     Plaintiffs seek economic and non-economic damages in an amount to be proven, including compensatory damages which include, but are not limited to, any coroner's fees and funeral expenses, emotional distress, loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against defendants as follows:

    a.     General and compensatory damages in an amount according to proof;

    b.     Punitive and exemplary damages against all individual defendants;

    c.     For all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and

1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law; and

d.    For all other and further relief as the Court may deem proper.

DATE: November 17, 2023       MCKENZIE SCOTT, PC

By:   */s/ Timothy A. Scott*
      TIMOTHY A. SCOTT
      LAUREN M. WILLIAMS
      Attorneys for Plaintiffs

COMPLAINT